IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDERICK SHELDON WALTER, )
        Petitioner, ) Civil Action No. 17-68 Erie
         )
        v. )
         ) Magistrate Judge Susan Paradise Baxter
JAMEY LUTHER, et al., )
        Respondents. )

**OPINION**[1]

Presently before the Court is the Respondents's motion to dismiss (ECF No. 7) the petition for a writ of habeas corpus that was filed by state prisoner, Frederick Sheldon Walter (the "Petitioner"), pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). For the reasons set forth below, the Respondents's motion is granted, the petition is dismissed with prejudice, and a certificate of appealability is denied.

**I.**

**A.**    **Relevant Background**

The Petitioner challenges the judgment of sentence imposed upon him by the Court of Common Pleas of Venango County in 2007, on his convictions of involuntary deviate sexual intercourse, aggravated indecent assault of a person less than 16 years of age, criminal attempt to commit aggravated indecent assault, corruption of minors, and two counts of indecent assault.[2] His minor stepdaughter, who

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] The Petitioner's first trial ended in a mistrial due to jury deadlock. Commonwealth v. Walter, No. 734 WDA 2005, slip op. at 3 (Pa.Super.Ct. Oct. 12, 2006) ("Walter I"). (ECF No. 7-12 at 1-20). After the Commonwealth indicated its intent to retry the case, the Petitioner filed a motion to dismiss based upon double jeopardy grounds and because the Commonwealth

1

is identified in the record as "L.W." was the victim. The trial court sentenced him on July 13, 2007. He is serving an aggregate sentence of 11 ½ to 24 years of imprisonment.[3]

Michael J. Antkowiak, Esq., was the Petitioner's trial attorney. James Carbone, Esq., who at the time was an assistant district attorney, prosecuted his case.[4]

On August 1, 2007, Antkowiak filed a motion to withdraw as counsel and indicated that the Petitioner had not retained him for an appeal. (ECF No. 7-16 at 1). On August 28, 2007, the trial court issued an order granting Antkowiak's motion and explaining:

> [Antkowiak] has filed a motion to be allowed to withdraw from the case. After discussion on the record the court concludes that justice requires that we allow him to withdraw.
>
> The [Petitioner] had not indicated an instruction to Mr. Antkowiak before today to file an appeal. The [Petitioner] and Mr. Antkowiak had agreed that the [Petitioner] would secure other counsel because the [Petitioner] told Mr. Antkowiak that he was "into him enough" and at this point could not afford further services. Mr. Antkowiak told us that they had discussed the appeal but he had not received instructions to perfect the appeal and it was his understanding that the [Petitioner] had already begun looking for other counsel, including applying to the Public Defender and also trying to find other replacement counsel.
>
> Under these circumstances, because Mr. Antkowiak cannot be expected to work for nothing, the court is constrained to grant the Motion to Withdraw Appearance.

(ECF No. 7-17 at 1-2). The court's order was copied to the Petitioner at his address at SCI Camp Hill. (Id. at 2). The Petitioner contends that he did not receive the court's order. (ECF No. 11 at 5).

Because the Petitioner did not file a direct appeal to the Superior Court, his judgment of sentence became final on or around **August 13, 2007**, which is the date upon which the 30-day time limit for him

---

committed discovery violations. Walter, No. 734 WDA 2005, slip op. at 1-19. The trial court denied the motion to dismiss and on October 12, 2006, the Superior Court issued a decision (Walter I) in which it affirmed the trial court's decision.

[3] "The original sentence contained a mathematical error in calculating the aggregate sentence. On September 18, 2007, this error was formally corrected through an amended sentencing order." Commonwealth v. Walter, No. 919 WDA 2014, slip op. at 2 n.1 (Pa.Super.Ct. July 14, 2015) ("Walter II") (ECF No. 7-30 at 1-8).

[4] In some parts of the record, it appears that when the Petitioner or the state court referred to "the district attorney[,]" they meant Carbone.

2

to file an appeal expired. Pa.R.A.P. 903(a); Gonzalez v. Thaler, 565 U.S. 134, 149-54 (2012) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

On or around July 9, 2008, the Petitioner filed a timely *pro se* motion for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. (ECF No. 7-18 at 1-11). The Petitioner's PCRA case was pending for a substantial amount of time. Initially, the PCRA court appointed William Cisek, Esq., to represent him. The Petitioner subsequently retained John C. Lackatos, Esq., to be his counsel.

On January 28, 2014, the Petitioner, through Lackatos, filed an amended PCRA motion. By this time, Carbone had been terminated from his position with the Venango County District Attorney's Office for misconduct that he had committed in other cases that he had prosecuted. (See Report and Recommendations of the Disciplinary Bd., ECF No. 3-5 at 9). In his amended PCRA motion, the Petitioner claimed, at paragraphs 5A through 5D, that Antkowiak provided ineffective assistance for the following four reasons:

> A. he "[f]ailed to lodge an objection to the district attorney's claim that the [Petitioner] threatened to harm the victim's mother if the victim did not recant her claim of sexual abuse by the [Petitioner]. The statement was made during the sentencing hearing in this matter where no evidence of this was presented by the Commonwealth at the time for trial;"
>
> B. he "[f]ailed to demand a mistrial by the clear discovery violation perpetrated by the District Attorney when said District Attorney admitted to the Court that he may have '…taken an original document' from the Venango County Children and Youth Services file and presented it as evidence at the time of trial without having provided said discovery documentation to defense counsel;"
>
> C. he "[f]ailed to demand a mistrial by the clear discovery violation perpetrated by the District Attorney when said District Attorney attempted to bring in as evidence pages from the victim's diary despite the fact that the District Attorney failed to serve the discovery on the defense;" and

3

> D. he "[f]ailed to demand a mistrial by the clear discovery violation perpetrated by the District Attorney when said District Attorney attempted to bring in an additional five pages of a police report when those five additional pages were never provided to the defense."

(ECF No. 7-19 at 2).

The PCRA court held a hearing on the Petitioner's claims on April 24, 2014, and on that same date it issued Findings of Fact. (ECF No. 7-20 at 1-4). It dismissed the amended PCRA motion the following day, on April 25, 2014. (ECF No. 7-21).

In denying Claim 5A, the PCRA court held that the Petitioner failed to establish that he was prejudiced by Antkowiak's decision not to object to the statements made by Carbone at the sentencing hearing. See Walter II, No. 919 WDA 2014, slip op. at 4. In disposing of the allegations that the Petitioner made at paragraphs 5B and 5C, the PCRA court first explained that these allegations were regarding what was introduced at the Petitioner's trial as Exhibit 7. (ECF No. 7-30 at 2). It was a letter written by the victim and dated January 1, 2005, and the PCRA court described it as "something like a diary[.]" (Id.) The trial court had permitted its introduction, over Antkowiak's objection, as a prior consistent statement. (Id.) The PCRA court held that there was no discovery violation with respect to this document, and it noted that Antkowiak "had been afforded opportunities by the Court to go to CYS, review the files and then have the court order documents produced as necessary." (Id.) The Petitioner had alleged that Carbone's misconduct in another case supported a contention that Carbone had removed documents from the CYS files in his case. The PCRA court rejected the Petitioner's allegation. Specifically, it found that the Petitioner's allegation that Carbone may have removed documents "from the CYS files simply is not supported on the record." (Id. at 2).

> Counsel has established that the [Carbone] said that on a prior occasion, not related to this case, he may have removed an original document from the CYS file but he had not removed one in this case. In fact, he told the Court that a CYS worker was at this [sic] elbow the entire time that he reviewed the file. Further, We did afford [Antkowiak] the

4

opportunity to examine the exhibit and counsel did move for a mistrial and We denied the mistrial because the exhibit was properly in evidence and there was no discovery violation.

(ECF No. 7-20 at 2-3.)

Finally, in disposing of the allegations that the Petitioner made at Claim 5D, the PCRA court held:

> …[Claim] 5D refers to the testimony of Trooper Tanner, who was the arresting officer in this case, and the victim prior to the preliminary hearing in this case did attempt to recant and there was substantial evidence as to what happened at that time. That evidence was developed fully at trial and was part of the defense theory as it bore upon the credibility of the victim. Trooper Tanner did refer to a supplemental police report that he had prepared that is now in evidence as PCRA Exhibit 1 and in Trooper Tanner's testimony he simply referenced in passing that he had put the material as to the recantation prior to and at the preliminary hearing in his supplemental report. It appeared to the Court at that time that defense counsel had not seen the supplemental report, We then gave defense counsel the opportunity to examine the report. Counsel did not raise any issue at the time as to the substance in the report that could have in some way either as exonerating evidence or as some other form of evidence which could have helped the defense theory. Had counsel done that at the time of trial We would have afforded appropriate relief. Even at this late date counsel for the petitioner has not pointed to anything in Exhibit 1 which would impact the trial tactics or which would impact the outcome of the trial and as the Commonwealth has correctly argued the concept that the victim had attempted to recant was dealt with extensively in the trial.

(Id. at 7-20 at 3-4).

The Petitioner subsequently applied to the Venango County Public Defender's Office for appellate counsel and his case was assigned to Charles R. Terwilliger, Jr., who represented him in his appeal to the Superior Court. By the time the Petitioner was pursuing his appeal, the Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania had charged Carbone "with violating multiple Rules of Professional Conduct and one Rule of Disciplinary Enforcement arising out the allegations of prosecutorial misconduct" in three of the cases he had prosecuted. (Report and Recommendations of the Disciplinary Bd., ECF No. 3-5 at 13).

5

*The Petitioner's case was not one of the cases at issue in that disciplinary action.* On June 17, 2015, the Office of Disciplinary Counsel and the Hearing Committee recommended that Carbone be disbarred.[5] (Id.)

A little less than one month later, on July 14, 2015, the Superior Court issued its decision, Walter II, in which it affirmed the PCRA's court's decision to deny the Petitioner's request for post-conviction relief. In denying Claim 5A, it held:

> [The Petitioner] contends that trial counsel was ineffective for failing to object to statements made by the prosecutor at sentencing. Specifically, [the Petitioner] highlights the prosecutor's assertion that [the Petitioner] threatened the minor victim that he would harm her mother if she told anyone about the abuse he perpetrated against her. [The Petitioner] contends that this assertion is unsupported by any evidence of record.
>
> We need not reach the substance of this argument, as we agree with the PCRA court that [the Petitioner] has failed to establish that he was prejudiced by any such failure on trial counsel's part. The sentence imposed by the trial court consisted of standard range sentences and mandatory minimums. In imposing this sentence, the trial court stated[:]

---

[5] In its Report and Recommendations, the Disciplinary Board summarized Carbone's misconduct as follows:

> In three separate cases, [Carbone] engaged in various forms of prosecutorial misconduct. During the prosecution of Anderson, [Carbone] violated a court order by interviewing one of the alleged victims without the presence of a responsible person from the Polk Center [State Hospital]. He then misrepresented to the court his contact with the alleged victim. [Carbone] utilized intemperate language and made a profane hand gesture during the closing argument in the second trial of Anderson, resulting in reversal of Anderson's conviction. [Carbone's] conduct was particularly harmful for the Commonwealth and for two alleged victims, as the charges against Anderson as to those alleged victims were dismissed on the basis of double jeopardy.
>
> During the prosecution of Culver, [Carbone] made misrepresentations during his opening statement as the evidence, including evidence that did not exist. During closing argument, [Carbone] mischaracterized the existence of expert witnesses. [Carbone] attempted to intimidate the defendant and his counsel by repeatedly yelling, menacing, and pointing in their faces.
>
> In the Sundol prosecution, [Carbone] discussed Sundol's case with her, without the knowledge or consent of Sundol's counsel, resulting in the Court disqualifying [Carbone] as counsel for the matter.

(Report and Recommendations of the Disciplinary Bd., ECF No. 3-5 at 14).

>           Alright,…the theme of the sentencing here is going to be standard range
>           sentences. The sentences are going to be driven by guidelines. I don't view
>           your behaviour as much different from what the law contemplates when
>           the guidelines were established. I'm sentencing to the findings of the jury
>           and again, as I've just stated, the sentences are all in the standard range of
>           the guidelines.
>                   - - -
>           Accepting the jury's findings as fact in this case you've done incredible
>           damage and the damage has essentially ripped your family.
>
>   N.T., Sentencing, 7/13/07, at 137-38.
>
>           Initially, we note that "it is well-settled that arguments of counsel are not
>   evidence." Com. v. Puksar, 951 A.2d 267, 280 (Pa. 2008). Even assuming that the
>   prosecutor's assertion that [the Petitioner] threatened the victim's mother lacked
>   evidentiary support, there is no evidence that the trial court was influenced by the
>   prosecutor's assertion. Indeed, the trial court was well aware of all of the allegations in
>   the case anyway, as it had sat through the trial of the case and heard the testimony that
>   allegedly supported the prosecutor's argument. [The Petitioner] has therefore failed to
>   establish the third prong of his ineffective assistance of counsel claim [prejudice]. Thus,
>   we conclude that no relief is due on [Claim 5A].

Walter II, No 919 WDA 2014, slip op. at 4-5.

In disposing of the Petitioner's remaining claims (Claims 5B-5D), the Superior Court first set forth the Petitioner's allegations:

>           [The Petitioner] argues that the PCRA court erred in concluding that trial counsel
>   was not ineffective for failing to request a mistrial based upon the cumulative effect of
>   multiple alleged discovery violations on the part of the Commonwealth.
>
>           Importantly, [the Petitioner's] argument is not that trial counsel failed to request a
>   mistrial for each of the underlying alleged discovery violations. [He] concedes that trial
>   counsel requested a mistrial each time he concluded that the Commonwealth had failed to
>   produce in discovery evidence that it was presenting at trial. See Appellant's Brief, at 9.
>   [The Petitioner's] argument is that trial counsel failed to request a mistrial based upon the
>   cumulative effect of all of the alleged discovery violations. See id.

Id. at 5. The Superior Court then explained that "no number of failed claims may collectively warrant relief if they fail to do so individually. However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. When the failure of individual claims is ground in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed."

7

Id. at 6 (quoting Commonwealth v. Spotz, 18 A.3d 244, 321 (Pa. 2011) (internal quotations and citations omitted). The Petitioner was not entitled to PCRA relief for the following reasons, the Superior Court held:

> [The Petitioner] identifies two separate instances of alleged discovery violations. First, [he] points to a diary entry of the victim's, which the Commonwealth entered into evidence at trial. Trial counsel objected, stating that he had not received the diary entry from the Commonwealth in discovery. The trial court overruled the objection, concluding that the Commonwealth had not committed a discovery violation. See N.T., Trial, 3/6/07, at 183. The trial court premised this conclusion upon finding that the prosecutor was credible in his claim that diary entry was in the Children and Youth file. See id., at 182. Therefore, this claim failed for a lack of merit, not a lack of prejudice, and cannot be included in a claim of cumulative prejudice.
>
> [The Petitioner] contends that subsequent disciplinary actions taken against the prosecutor contradicts the trial court's credibility findings. The PCRA court notes that, while the prosecutor has admitted to removing original documents from the Children and Youth file in other cases, he denied removing the diary entry. See N.T., Trial, 3/8/07, at 86. The PCRA court found that [the Petitioner's] allegation that the prosecutor had "secreted the [document] from the CYS files simply is not supported on this record." N.T., PCRA hearing, 4/24/14, at 49. We cannot conclude that this factual finding is an abuse of discretion, and therefore, conclude that [the Petitioner's] argument does not alter the trial court's initial ruling that no discovery violation occurred.
>
> This leaves [the Petitioner] with only a single instance of a discovery violation objection that the trial court overruled based upon a lack of prejudice: a State Trooper's supplemental report regarding recantation by the victim which was not provided to [the Petitioner] during discovery. Trial counsel objected and requested that it be excluded from evidence. See N.T., Trial, 3/8/07, at 332. The trial court provided a copy of the report to trial counsel, and stated "you show me prejudice we'll deal with it." Id., at 333. Thus, this discovery violation could provide a partial basis for a cumulative prejudice claim. However, as noted above, the only other alleged discovery violation was not dismissed for lack of prejudice, but due to a finding that no violation had occurred. As a result, [the Petitioner's] argument that the cumulative effect of multiple alleged violations has no merit, and affords him no relief on appeal.
>
> Having found that the PCRA court did not commit an error of law, we affirm the order denying [the Petitioner] relief on his PCRA petition.

Id. at 7-8.

The Petitioner did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania. Accordingly, his PCRA proceeding concluded on or around **August 15, 2015**, when the

time for him to do so expired. Swartz v. Meyers, 204 F.3d 417, 420-21 (3d Cir. 2000). The Petitioner contends that on **October 19, 2015**, he received from the Public Defender a petition to withdraw as counsel, and that was also the date he first learned that the Superior Court had issued Walter II. (ECF No. 3 at 15, 51; ECF No. 11 at 8).

The Petitioner filed his petition for a writ of habeas corpus with this Court, at the very earliest, on **April 19, 2017**, which is the date he placed it in the prison mailing system. It appears that he is raising the same claims of ineffective assistance (and the underlying claims of prosecutorial misconduct) that the Superior Court denied in Walter II. He may also be contending that his second trial violated the Double Jeopardy Clause, a claim the Superior Court denied in Walter I.

The Respondents filed a motion to dismiss (ECF No. 7) on the grounds that the Petitioner's claims are untimely under AEDPA's one-year statute of limitations. In his reply (ECF No. 11), the Petitioner contends that he is entitled to equitable tolling and that he should be exempted from the AEDPA's statute of limitations because he is actually innocent.

## **B.** **Discussion**

The Respondents are correct that the Petitioner's claims must be dismissed because he filed his petition outside of AEDPA's statute of limitations. AEDPA requires, with a few exceptions not applicable here, that habeas corpus claims under 28 U.S.C. § 2254 be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A). It also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

As set forth above, the Petitioner's judgment of sentence became final on or around **August 13, 2007**. Therefore, AEDPA's limitation period began to run on that date. In accordance with § 2244(d)(2), his PCRA petition statutorily tolled AEDPA's statute of limitations beginning on or around **July 9, 2008**. By that date, approximately 331 days (from August 13, 2007, to July 8, 2008) had expired from the limitations period. The Petitioner's PCRA proceeding concluded on or around **August 15, 2015**, and AEDPA's limitations period began to run again the next day, on **August 16, 2015**. Since 331 days had already expired from the limitations period, the Petitioner had 34 more days–until on or around **September 19, 2015**–to file a timely federal habeas petition. He did initiate this action until, at the very earliest, **April 19, 2017**, and, therefore, his claims are untimely by approximately 578 days if no equitable tolling applies.

The Supreme Court has held that AEDPA's statute-of-limitations period "is subject to **equitable tolling** in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows both that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Id. at 649. See also United States v. Thomas, 713 F.3d 165, 174 (3d Cir. 2013); Ross v. Varano, 712 F.3d 784, 798-804 (3d Cir. 2013); Munchinski v. Wilson, 694 F.3d 308, 329-32 (3d Cir. 2012). "This conjunctive standard requires showing **both** elements before we will permit tolling." Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis in original). The United States Court of Appeals for the Third Circuit has explained:

> "There are no bright lines in determining whether equitable tolling is warranted in a given case." Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011). Nevertheless, "courts must be sparing in their use of equitable tolling," Seitzinger v. Reading Hosp. & Medical Ctr., 165 F.3d 236, 239 (3d Cir. 1999), and should do so "only when the principles of equity would make the right application of a limitation period unfair." Miller [v. New Jersey State Dept. of Corr.], 145 F.3d [616, 618 (3d Cir. 1998)].

Sistrunk, 674 F.3d at 190.

It appears that the Petitioner is arguing that he entitled to equitable tolling to cover two periods in which AEDPA's statute of limitations was running. First, it may be that he is contending that he entitled to some tolling after his judgment of sentence became final because he was not aware that the trial court had permitted Antkowiak to withdraw as his counsel. Second, it may be that he is contending that, after his PCRA proceeding (and statutory tolling) had concluded, he is entitled to equitable tolling until October 19, 2015, because that is the date he learned that the Superior Court had issued Walter II.

The Court will assume without deciding that the Petitioner is entitled to equitable tolling (1) from the date he his judgment of sentence became final (on or around August 13, 2007), until the date he filed his pro se PCRA petition on July 9, 2008, (at which time AEDPA's statute of limitations was statutorily tolled under § 2244(d)(2) and continued to be statutorily tolled until August 13, 2015), and, (2) from the date his PCRA proceeding concluded on or around August 13, 2015, until he received notice of the Superior Court's decision on October 19, 2015. Calculating the statute of limitations under these assumptions, the Petitioner would have had one year from the date he learned that the Superior Court had denied his PCRA appeal (that is, until **October 19, 2016**) to file his federal habeas claims. Thus, even with the benefit of significant equitable tolling, his claims are still untimely (by approximately 181 days).[6]

---

[6] There is no basis to extend to the Petitioner equitable tolling for any of the time that expired between October 19, 2015, to the date he filed his federal habeas petition. The Petitioner may not have understood the ramifications of waiting so long to seek federal habeas review with this Court, but it is well established that a petitioner's "lack of legal knowledge or legal training does not alone justify equitable tolling." Ross, 712 F.3d at 799-800 (citing Brown v. Shannon, 322 F.3d 768, 774 (3d Cir. 2003) (equitable tolling not justified where petitioner had one month left in limitations period in which he could have filed "at least a basic pro se habeas petition" at the time that petitioner's attorney informed him that he would not file an appeal in state court on his behalf and could no longer adequately represent him); and Doe v. Menefee, 391 F.3d 147, 177 (2d Cir. 2004) ("Given that we expect pro se petitioners to know when the limitations period expires...such inadvertence on Doe's part cannot constitute reasonable diligence.")).

The Petitioner also argues that he should be exempted from AEDPA's statute of limitations because is innocent. In McQuiggin v. Perkins, 569 U.S. 383 (2013), the Supreme Court recognized that the actual innocence gateway to federal habeas review developed in Schlup v. Delo, 513 U.S. 298 (1995) extends to cases where a petitioner's claims would otherwise be barred by the expiration of the one-year statute of limitations prescribed by AEDPA. It explained, however, that the "actual innocence" exception applies only to a "severely confined category" of cases, namely, those matters where the petitioner produces "new evidence" that "shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Id. at 395 (quoting Schlup, 513 U.S. at 329) (bracketed text added in McQuiggin). The Supreme Court also cautioned that "tenable actual-innocence gateway pleas are rare[,]" id. at 386, and that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 401 (quoting Schlup, 513 U.S. at 316).

The Court cannot conclude that this is one of those rare cases where the actual-innocence gateway applies. The Petitioner relies upon the fact that Carbone was subsequently disbarred for his misconduct in other cases. However, the Petitioner did not direct this Court to information that came out during the disbarment proceedings or during his PCRA proceeding that would qualify as new evidence of his actual innocence. Therefore, there is no basis to exempt him from AEDPA's one-year statute of limitations under the Supreme Court's holding in McQuiggin.

**C.    Certificate of Appealability**

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It

12

provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether the Petitioner's claims should be dismissed as untimely. Accordingly, a certificate of appealability is denied.

**II.**

For the reasons set forth above, the Respondents's motion to dismiss is granted, the petition is dismissed with prejudice, and a certificate of appealability is denied.

An appropriate Order follows.

Dated: February 7, 2018
<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK SHELDON WALTER, | ) | |
| Petitioner, | ) | Civil Action No. 17-68 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| JAMEY LUTHER, et al., | ) | |
| Respondents. | ) | |

# **ORDER**

AND NOW, this 7th day of February, 2018, IT IS HEREBY ORDERED that the Respondents's motion to dismiss ([ECF No. 7) is GRANTED, the petition is DISMISSED with prejudice, and a certificate of appealability it DENIED. The Clerk of Court shall mark this case CLOSED.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

cc:   Notice by ECF to counsel of record and by U.S. mail the Petitioner at his address of record

14